**EASY WASHING MACH. CORPORATION et al. v. VIEAU et al.**

District Court, N. D. New York.

Oct. 5, 1932.

E. A. Thompson, of Syracuse, N. Y., for complainants.

George P. Kimmel, of Washington, D. C., and Charles W. La Porte, of Peoria, Ill., for defendants.

AUGUSTUS N. HAND, Circuit Judge.

This suit is brought under section 4915 of the Revised Statutes, as amended March 2, 1927, § 11 (35 USCA § 63), for a decree canceling United States patent No. 1,805,428, to Harold F. Vieau and directing the issuance of a patent to the complainant Walter A. Papworth. The Examiner of Interferences awarded priority of invention to Vieau, and his decision was affirmed by the Board of Appeals. Thereafter Papworth brought this suit, which came to final hearing before me at Elizabethtown, N. Y., on August 16, 1932. The record at the trial consisted of the depositions before the Examiner in the interference proceeding, the testimony of thirteen witnesses heard in open court, and the deposition of one witness taken under the Revised Statutes. I have had the advantage of seeing and hearing the thirteen witnesses, whereas all the proof before the Examiner was upon written interrogatories. After reading the depositions, hearing the witnesses at the trial, and refreshing my recollection by reading the minutes of the stenographer who took their testimony, I have reached the conclusion that Papworth, and not Vieau, was the inventor, and that the patent should issue to him.

The invention relates to an apparatus for rinsing and drying clothes operated centrifugally. On June 22, 1926, United States patent No. 1,590,002 was granted to Harold F. Vieau, Roy C. Higby, and Edward J. O'Neill. Thereafter on September 28, 1926, Walter A. Papworth and Peter E. Geldhof, employees of the Easy Washing Machine Corporation, filed a joint application for a patent of a similar centrifugal clothes drier which was, by amendment, changed into an application by Papworth alone. An interference was declared between United States patent No. 1,590,002 to Vieau, Higby, and O'Neill and this Papworth application.

Thereafter a reissue application was filed by Vieau, Higby, and O'Neill, during the pendency of which it was discovered that the invention involved in the interference was solely that of Vieau. By a decision of the Law Examiner, an application by Vieau filed June 11, 1927, was added to the interference and the interference was dissolved as to the joint patent to Vieau, Higby, and O'Neill. The subject-matter of this last interference is a centrifugal clothes drier defined in the following counts:

"1. In an apparatus for the purpose set forth, a vertically disposed and revoluble receptacle forming a combined rinsing and drying chamber, an adjustable drain board, means carried at the top of the receptacle to permit of adjustably positioning said board circumferentially with respect to the receptacle for directing the overflow from said chamber to the point desired.

"2. An apparatus for the purpose set forth comprising a washing chamber, a combined rinsing and drying chamber, and a revoluble support carried at the top of the combined rinsing and drying chamber and provided with a drain board capable of being shifted by the support to extend over the washing chamber for directing the overflow from the combined rinsing and drying chamber into the washing chamber.

"3. In an apparatus for the purpose set forth, a vertically disposed revoluble receptacle flanged outwardly at its upper end to provide a bearing surface for a lid, a separable driving connection for the lower end of said receptacle, a troughed member having an open upper end and surrounding the upper end of said receptacle and manually adjustable about the axis for directing water expelled thereinto from said receptacle to the point desired. A drain board connected to and adjustable with said troughed member, a supporting means for said troughed member, a cover for the open upper end of said trough member, and a lid revolubly to assume a closed position with respect to said receptacle and have an engaging relation with the flanged end thereof, said lid and flanged portion of said receptacle being so related to each other as to provide water egress passages therebetween.

"4. In an apparatus for the purpose set forth, a centrifugal extractor comprising a rotatable receptacle, a cover for the receptacle, circumferentially adjustable means for the discharge of overflow water at the top of the receptacle, said means permitting of the discharge of the liquid selectively about the receptacle, and means independent of said receptacle for supporting said cover for rotation with the receptacle."

The invention was described by the Board of Appeals of the Patent Office as follows:

"The invention relates to a centrifugal clothes dryer intended for use in a laundry unit in lieu of the ordinary wringer. The device comprises a receptacle having the general tapered shape of an ordinary pail or bucket. It has imperforate sides adapting it to be used as a rinsing receptacle. It is mounted for rotation about its central vertical axis and is driven at such speed that the water is not only expelled from the clothes by centrifugal action but also is caused to flow upward along the tapered side walls and discharge thereover into a surrounding trough. The trough is swiveled in the supporting standard and is provided with a spout which may be directed to discharge the water into either tub of the unit by manually turning the trough. The upper end of the receptacle is closed by a pilot cover pivotally mounted in the standard for rotation with the receptacle. Discharge openings are provided between the engaging portions of the receptacle and cover to permit the water to pass into the trough."

I can feel no reasonable doubt that Papworth designed the centrifugal drier covered by the claims. That he originated it is proved by his drawings and by the test with the pail in August, 1924. Vieau admits that he knew of that test. While he denies that he discussed Papworth's centrifugal drier and imperforate basket with him, or that he was shown his drawings, the proof that the drawings were made by Papworth in August and September, 1924, and that the test occurred in August is overwhelming. Vieau was chief draftsman for the complainant and, as such, assigned the work in the drafting room. It is inherently unlikely that he did not know what was going on there or that Papworth was designing a centrifugal drier with an imperforate basket in the same room with him and that Vieau neither inspected the sketches nor was even aware of their existence. Papworth was a truthful appearing witness, and both in his deposition before the Patent Office and at the trial before me insisted that Vieau discussed his sketches with him and told him to go ahead with the drawings. Geldhof, the chief engineer of the complainant, testified that he had seen the test with the pail and also the sketches and that he gave the order to Vieau to direct Papworth to proceed with the development. McCarty, one of

the draftsmen, likewise saw the test and the sketches. Delaney, another draftsman, who did not testify in the interference proceeding, made a part of the drawings under Papworth by direction of Vieau. The sketches of Papworth and Delaney are dated in August and September, 1924.

I think it clearly proved (1) that the test was made and seen by Papworth, Geldhof, McCarty, and by Nelson, the manager of the company, and was known to Vieau, as well as to his witnesses Hooper and Defibaugh; (2) that the sketches were made by Papworth and Delaney and given to Vieau; (3) that Vieau's claim that he was directed to have nothing to do with Papworth, which Wilkinson and Geldhof, the chief engineers, and Nelson, the general manager, deny, is contradicted by the probabilities of the case, as well as by the clear weight of the evidence.

The mere fact that Vieau has admitted that he knew of the preliminary test by Papworth with the pail is strong evidence that he was not unaware of the latter's conception. Moreover, his position as chief draftsman and his natural interest in what was going on in the room where the drafting was under his control make it almost impossible to believe that he did not see the sketches and talk over the project with Papworth, as the latter says he did. The best that Vieau can claim is that he himself made the same invention earlier than Papworth. That both men made the same invention independently is theoretically possible, but inherently most unlikely. There is not the slightest evidence that when Papworth developed his drawings in August and September, 1924, he was borrowing his ideas from any previous sketches of Vieau. Indeed, I do not understand that Vieau claims that Papworth's sketches and drawings at those times could have been plagiarisms from him.

Vieau throws doubt on the date of Papworth's invention, but it is authenticated by several witnesses, by dates on the drawings, and by the proof of the contemporary test with the pail in August, 1924. When Vieau saw the pail and heard of the test, it is remarkable that he should have made no mention of his own alleged design of a centrifugal drier with an imperforate basket if he had originated it some time before. Even if we should assume that he did not see Papworth's sketches, it is almost equally strange that he should have neglected to mention his alleged previous design of a drier with an imperforate basket at a time when he was actively engaged in developing for the complainant a similar drier with a perforated basket.

I think that the claim of Vieau that he originated the invention in 1921 or 1923 must fail for lack of proof. In the first place, his story about the conception of his invention in 1921, and his subsequent sketch on October 10, 1923, comes from a man discredited by his denial that he knew anything about Papworth's drawings in 1924, refuted as it is by his admission of knowledge of Papworth's test in 1924 by a weight of testimony and by inherent probabilities. Moreover, his story about the sketch on October 10, 1923, depends entirely on his uncorroborated testimony. The identification mark on it attributed to Hedglon is not confirmed by the latter, who had no recollection of the sketch, but merely acknowledged that he was accustomed to use such a mark, which was capable of ready simulation. The sketch by O'Neill, dated December 14, 1923, while confirmed by O'Neill, Vieau, and O'Neill's two workmen, Shillo and Cool, lacks adequate proof as to its date. It seems unlikely that O'Neill, if interested enough in Vieau's conception to make a sketch of it, should have done nothing about it for eighteen months or more, though he had taken pains to procure an attestation of his crude drawing. About this very time O'Neill, with the aid of Vieau, was rebuilding washing machines manufactured by the complainant that had been purchased from a junk dealer. It seems strange that he should have done nothing then to develop Vieau's alleged new invention of a centrifugal drier with an imperforate basket if it had really been made. Moreover, the line apparently drawn through the name of Brennan, O'Neill's partner, on the letterhead of the sheet on which the sketch was made, indicates a much later date than December, 1923, for Brennan remained a partner until May or June, 1924, and tends to show that the real date of the sketch may have corresponded with the time when Vieau, after quitting complainant's employment, had begun to design his centrifugal washer in cooperation with O'Neill. The confirmation of the date of the sketch by Schillo and Cool, workmen of O'Neill, is weakened by the consideration that they were interested witnesses and that their memory may well have been impaired by the five years which had elapsed before they were called upon to testify. The date substantially rests upon the testimony of Vieau and O'Neill, who each own one-third of the patent in interference. O'Neill's story involves the assumption that he would attempt to picture in a crude sketch the invention of a skilled draftsman like Vieau, in-

stead of asking the latter to give him an accurate drawing. Why O'Neill should do this when he was not the inventor and had at that time no idea of developing the illustrated device, passes my comprehension. In addition to all this, the sketch does not indicate that the drain board illustrated in it was circumferentially adjustable, as described in the claims. There is also the extreme improbability that Vieau would make his sketch (Exhibit D) and disclose his invention to O'Neill without ever mentioning it to Papworth or to any one else when the latter was developing the same thing in August and September, 1924.

Another reason for believing that Vieau did not originate the invention in 1923, but borrowed his ideas from Papworth, whose acts he must have been familiar with, is that when he wished to demonstrate workings of his invention he used a tapered pail mounted in a drill press to show Higby how his centrifugal drier would operate. This was an exact imitation of Papworth's test that Vieau concededly had known about. When Vieau followed Papworth so closely in the matter of this test, it can hardly be thought that he did not know of the other steps that Papworth was taking in developing his centrifugal driers, or that Papworth did not tell the truth when he testified that he discussed his invention with Vieau and showed him his drawings.

The testimony of Defibaugh, Hooper, and Montague that they did not see the drawings is no answer to Papworth's evidence. The first two were not in the drafting room but in the engineering department of complainant, no model of the drier was built, and they therefore had no reason to use or know of the drawings. Montague was in charge of filing and did some drafting. In the course of his employment he would not have to examine Papworth's drawings more than enough to file them, and their contents might not impress his memory.

The pilot cover, rotatable with the tapered basket and acting to center it, Vieau learned about from the development of the centrifugal drier with a perforated basket that was going on at complainant's shops. This pilot cover is not shown in either of the 1923 sketches I have mentioned, and was first applied by Papworth to a tapered imperforate basket extractor. Papworth was clearly the originator of the combination covered by claims 3 and 4. Vieau merely adopted his plan as well as that covered by claims 1 and 2.

It is always distasteful to have to determine questions of fact which involve the credibility of witnesses like Vieau and O'Neill. Plainly the former was a dissatisfied employee. A personal interest and a grievance (real or supposed) often stimulate the imagination so as to embellish facts and supply a defective memory where no intention to falsify is involved. In any event, after hearing Papworth and his witnesses, I am impelled to differ with the Patent Office and to believe him and his story rather than that of Vieau and O'Neill.

A decree is granted to the complainant, with costs.